**LOCAL 464, AMERICAN BAKERY AND CONFECTIONERY WORKERS INTERNATIONAL UNION, AFL–CIO, Plaintiff,**

v.

**HERSHEY CHOCOLATE CORPORATION, Defendant.**

**Civ. A. No. 9040.**

United States District Court
M. D. Pennsylvania.

Sept. 28, 1965.

---

2. P. 177 of the Opinion, 69 S.Ct. p. 1311.

Meranze, Katz, Spear & Bielitsky, Philadelphia, Pa., Harold Tull, Harrisburg, Pa., for plaintiff.

McNees, Wallace & Nurick, Harrisburg, Pa., for defendant.

FOLLMER, District Judge.

In this action plaintiff Union seeks injunctive relief against defendant employer in connection with an alteration in the hours of work.

From testimony educed at the hearing, oral arguments and briefs of counsel, the Court makes the following:

## FINDINGS OF FACT

1. Plaintiff is an unincorporated labor organization which is the certified collective bargaining agent for the production workers employed by defendant.

2. Defendant is a manufacturer of chocolate, cocoa and confectionery products, engaged in interstate commerce.

3. Plaintiff and defendant are parties to a collective bargaining agreement currently in effect and due to expire on December 31, 1966.

4. Without objection from the plaintiff, defendant on June 26, 1965 altered the work schedules of some fifty-six workers employed in the Syrup Department, the effect of such alterations being to delay the daily starting and quitting times of these employees by one and one-half hours from June 26 to August 1, 1965.

5. Upon being informed of defendant's intention to continue such temporary work schedule beyond that date and until September 6, 1965 (Labor Day), plaintiff filed a grievance, which subsequently has been processed in accordance with the arbitration clause (Paragraph 9 (a) (5)) of the collective bargaining agreement.

6. The collective bargaining agreement provides in Paragraph 14 as follows with respect to changes in work scheduling:

> *"14. Work Schedules, Changes In*
>
> The Union representative concerned shall be notified as early as possible of all changes in work schedules. Should any question arise, the Employer shall discuss the same with the Union representatives. In such case the effective date of such work-schedule changes shall be postponed as long as practicable."

7. Pursuant to Paragraph 14 of the agreement defendant did discuss the proposed continuation of the schedule changes and the reasons therefor with plaintiff on July 8, 1965, and on numerous occasions subsequent thereto.

8. Defendant has at all times indicated its willingness to proceed to arbitration as provided by the collective bargaining agreement, and has taken all steps possible to expedite the arbitration of this matter.

9. Defendant in refusing to waive its contractual right to have arbitrable issues decided pursuant to Paragraph 9 (a) (5) of the collective bargaining agreement is only exercising its bargained-for prerogative.

10. At most plaintiff has shown that the temporary working time adjustments have resulted in minor inconveniences to some thirteen of the fifty-six workers affected by the change, and an affront to the status of Local 464, neither of which factor is tantamount to the statutory requirement of substantial and irreparable

damage justifying the granting of a preliminary injunction.

11. The opportunity to tour the syrup facilities extended to the many summer tourists and the consequent benefits that will inure to the defendant and all of its employees as a result of this temporary arrangement far outweigh the transient and minor inconveniences felt by the few workers who have voiced complaints.[1]

## DISCUSSION

Without objection from plaintiff, defendant on June 26, 1965, did alter the work schedules of certain of its production employees including fifty-six in the Syrup Department, Syrup Can Manufacturing Department, and Maintenance Mechanics assigned to these departments. The effect of the changes was to delay the daily reporting and quitting time of these employees one and one-half hours. This was done to accommodate the vast number of visitors who tour the plant during the summer months. The work performed by the employees mentioned would not have been seen by the tourists under the old time schedule. Plaintiff agreed to the altering of the hours of working from June 26 to August 1, 1965.

On July 8 and again on July 15, 1965, defendant notified plaintiff's agents of its intention to continue the new schedule of hours through August, rather than reverting to the former schedules on July 31, 1965, as previously contemplated. Plaintiff objected and on July 23, 1965, filed a grievance under the provisions of Paragraph 9 of the collective bargaining agreement. In the grievance plaintiff claimed that the defendant's continuing the July schedule of hours was in violation of Paragraph 29 of the agreement, which reads:

"*29. No Change Clause*

No change in the present rates of pay, wages, hours of employment or other conditions of employment shall be made during the life of this Agreement or any extension thereof, except as provided herein or after collective bargaining between the parties hereto."

Defendant contends that one of the changes provided for in the agreement is that of work schedules, as set forth in Finding of Fact No. 6.

The matter was referred to a Conference Committee consisting of six members (three representatives of the Employer and three representatives of the Union). No agreement having been reached by the Conference Committee, the matter was referred to arbitration under Paragraph 9 of the agreement. At the request of both parties, the United States Mediation and Conciliation Service has submitted a panel from which an arbitrator is to be selected.

Up to this point the procedure followed would appear to be in strict accordance with the agreement. Plaintiff accuses defendant of refusing to co-operate with plaintiff in securing an expedited arbitration.

I am of the opinion that defendant has done everything required of it by the agreement. Plaintiff has certainly shown no substantial and irreparable injury. In the complaint plaintiff claims that its status as a union in grievance procedure is threatened.

Plaintiff suggests as a finding that the members of the plaintiff Union are suffering the type of irreparable damage which cannot be measured in monetary terms by being forced to work until a later hour than their schedules would ordinarily require. A claim of this precise nature was considered by Judge Kraft in Fuller v. Highway Truck Drivers and Helpers Local 107, D.C.E.D.Pa., 228 F. Supp. 287, 290 (1964). He said:

"There is no evidence to indicate that any of the former Novick drivers have yet suffered either loss of employment or loss of time from em-

1. The Court has adopted practically as suggested a number of defendant's Findings of Fact and Conclusions of Law be-

cause they clearly set forth the views of the Court.

ployment. To the extent that the evidence is revealing it discloses that the only drivers concerning whom evidence was offered were still regularly employed, and for periods in excess of the normal forty hours weekly. True, some complain that their present seniority status obliges them to arise earlier in the morning because of less desirable trip assignments, etc. but, for the purposes of a motion for preliminary injunction, we do not deem this to be a showing of, or a threat of, immediate and irreparable injury. No allegation is made that any defendant is financially irresponsible, and any injury suffered by plaintiffs, should they prevail upon final hearing, does not appear irreparable. The inconvenience entailed by earlier rising and less desirable trip assignments, which plaintiffs stress, has never been regarded as a type of damage immeasurable in dollars. Courts daily award damages for pain, suffering and for more serious inconveniences."

No claim is here made that any of the employees involved lost employment or loss of time from employment.

Local Division 1098, etc. v. Eastern Greyhound Lines, D.C.D.C., 225 F.Supp. 28 (1963), is cited by plaintiff as the "most compelling decision in this regard." This case is completely inapposite. There the defendant proposed removing its repair and maintenance operations from Washington, D. C. to Chicago, Illinois. Furthermore, the arbitration proceeding was seriously delayed by the inability of acceptable arbitrators to serve.

It is the considered opinion of the Court that the equities weigh heavily in favor of defendant. That Hershey Chocolate Company, Hershey, Pennsylvania, is a very large concern employing thousands of workers, and consisting of a large number of separate units or operations, is a matter of common knowledge. During the summer months over 250,000 visitors tour the plant. This is certainly good publicity. The burden of this complaint is the inconvenience caused by a one or one and one-half hour shift in hours of work involving less than sixty employees in one unit plus what the Union (plaintiff) claims is a loss of status. This is not the sort of thing that justifies injunctions.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of this matter by virtue of Section 301 of the Labor Management Relations Act of 1947 as amended.

2. There is presently in effect a collective bargaining agreement which contains a provision for the final and binding arbitration of all disputes and grievances (Paragraph 9 (a) (5)).

3. An arbitrable dispute within the terms of the collective bargaining agreement has arisen.

4. The burden is on the plaintiff to justify a departure from the agreed-to method of arbitration, and an injunction will not issue unless the procedural prerequisites of the Norris-La-Guardia Act are established.

5. Plaintiff has not shown that defendant has refused to engage in the agreed-to method of arbitration, and defendant has in fact indicated its willingness to expedite the arbitration process by agreeing in court that Dr. Horlacher be requested to render a decision within forty-eight hours of hearing the dispute.

6. Plaintiff, though petitioning for equitable relief, made no effort to alleviate the hardships alleged to have been suffered by communicating to Dr. Horlacher the need for a prompt resolution of the dispute.

7. The temporary work schedule adjustments complained of were instituted solely to accommodate summer tourists, and have no detrimental effect on wages, working conditions, seniority, fringe benefits, job status, or any other rights or benefits enjoyed by the employees affected.

8. Under Paragraph 14 of the collective bargaining agreement defendant had

the right to institute the work schedule changes.

9. Plaintiff has failed to show the substantial and irreparable injury that is a necessary prerequisite to the issuance of an injunction.

10. Plaintiff is not entitled to the injunctive relief sought.

Defendant's motion to dismiss will be granted. The complaint not only fails to state a claim upon which relief can be granted but the Court clearly should refuse to interfere in the premises pending arbitration.

An appropriate Order will be entered.