**PREPMORE APPAREL, INC., Plaintiff-Appellee,**

v.

**AMALGAMATED CLOTHING WORKERS OF AMERICA, AFL–CIO, Defendant-Appellant.**

**No. 28703.**

United States Court of Appeals, Fifth Circuit.

Aug. 3, 1970.

Rehearing Denied and Rehearing En Banc Denied Oct. 1, 1970.

---

John R. Brown, Chief Judge, dissented and filed opinion.

Benj. L. Erdreich, Jerome A. Cooper, Cooper, Mitch & Crawford, Birmingham, Ala., Jacob Sheinkman, New York City, for defendant-appellant.

C. A. Powell, III, Robert McD. Smith, Birmingham, Ala., for plaintiff-appellee; Lange, Simpson, Robinson & Somerville, Birmingham, Ala., of counsel.

Before JOHN R. BROWN, Chief Judge, and BELL and INGRAHAM, Circuit Judges.

BELL, Circuit Judge:

This is an appeal by the union from a final judgment dismissing a counterclaim. Rule 54(b) F.R.Civ.P. Prepmore Apparel, Inc. brought a complaint against the union for damages arising out of a strike of Prepmore's plant in Russellville, Alabama. The complaint was premised on secondary activities on the part of the union, actionable under § 303 of the Labor-Management Relations Act, 29 U.S.C.A. § 187, and for injury to Prepmore's business caused by strike violence, actionable under Alabama law. See Intern. Union, United Automobile, etc. Workers v. Russell, 1958, 356 U.S. 634, 78 S.Ct. 932, 2 L.Ed.2d 1030; San Diego Building Trades Council, etc. v. Garmon, 1959, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775. Jurisdiction over the claim based on state law was said to be pendent. Cf. United Mine Workers of America v. Gibbs, 1966, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218. The complaint is not involved in this appeal.

The union filed a counterclaim in two counts. The first count asserted a claim under § 1 of the Sherman Act, 15 U.S.

C.A. § 1, seeking treble damages and injunctive relief. The second count was based on a claim for damages under state law for interference with the business of the union and sought compensatory and punitive damages.

The district court dismissed both counts of the counterclaim under Rule 12(b) (6), F.R.Civ.P., and this appeal followed. We affirm.

Two issues are presented. One is whether a cause of action was stated in Count 1 upon which relief could be granted. The same question is presented in connection with Count 2.

The issues presented must be considered in the context of notice type pleading. As such, they are subjected to the rule that dismissal is proper only if it appears beyond doubt that the counterclaimant can prove no state of facts in support of its claim which would entitle it to relief. Conley v. Gibson, 1957, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80. As we said in Fowler v. Southern Bell Telephone & Telegraph Co., 5 Cir., 1965, 343 F.2d 150, a motion to dismiss under Rule 12(b) (6),

> " * * * serves the same function as a common law general demurrer, i. e., it is used to challenge the legal sufficiency of the complaint. The complaint is to be liberally construed, and a dismissal is not warranted unless it is clear that plaintiff would be entitled to no relief under any state of facts that might be proved in support of the complaint."

Construing the complaint in the most liberal fashion, the following facts appear. Prepmore claims damages arising out of a strike which did not begin until December 12, 1966. The union seeks relief for activities which ensued from a conspiracy entered into "on and before July of 1966." The union claims that Prepmore and two of its officers con-spired with an out of state company, Blue Bell, Inc. and its president (added as defendants in the counterclaim), to injure the union and to destroy its operations in Russellville. This was done through a refusal to deal with the union concerning wage rates and working conditions. Blue Bell agreed to aid Prepmore in hindering and preventing the union from carrying on its lawful business of representing the employees at the Prepmore plant. We can assume for the purpose of notice pleading that a business purpose undergirded the alleged conspiracy.

Prepmore had its only place of business at Russellville. The union was certified as the representative of Prepmore's employees on July 26, 1966. Efforts to negotiate a collective bargaining agreement proved futile and the strike began in December 1966. It continued for more than six months thereafter. Ultimately, Prepmore terminated its operations at Russellville, according to the complaint, because of the strike. The complaint was filed in December 1967 and the counterclaim in March 1969. The union contends that the counterclaim was based on facts learned during discovery proceedings.

### I.

■ We affirm the dismissal of the Sherman Act claim (Count I), on the a fortiori teachings of Apex Hosiery Company v. Leader, 1940, 310 U.S. 469, 60 S.Ct. 982, 84 L.Ed. 1311.[1] There the court refused to apply the Sherman Act to a combination of employees whose successful purpose through violent means was to impose a direct restraint on the movement of goods in interstate commerce as a weapon in support of their bargaining demands. The court pointed out that the Sherman Act was designed to prevent restraints on compe-

---

1. In doing so, we pretermit the question whether a union may be "injured in its business or property" within the meaning of § 4 of the Clayton Act. 15 U.S.C.A. § 15. Cf. § 6 of the Clayton Act, 15 U.S. C.A. § 17, and see Martin v. Phillips Petroleum Co., 5 Cir., 1966, 365 F.2d 629, cert. den., 385 U.S. 991, 87 S.Ct. 600, 17 L.Ed.2d 451; Dailey v. Quality School Plan, Inc., 5 Cir., 1967, 380 F.2d 484.

tition in business and commercial transactions. The court went on to say that the Sherman Act was not applicable, in any case, whether involving a labor organization or not, unless there was some form of restraint on commercial competition in the marketing of goods or services. The mere prevention of the shipment of the employer's goods in interstate commerce was not such a form of restraint. The sine qua non of a violation of the Sherman Act was said to be a contract, combination or conspiracy to restrain competition in the common law sense of monopolizing supply, controlling prices, or discriminating between would-be purchasers. The court recognized that many union activities such as strikes, wage agreements and the like may influence competition in goods or interrupt the course of trade but that this was not the form of restraint contemplated by the Sherman Act.

The activities in *Apex Hosiery* were solely those of the union. There was no combination with non-union groups but even in such cases, proscription would follow only in the event of a restraint in the classic common law sense on commercial competition in goods and services. This is made clear by two subsequent decisions of the Supreme Court. In Allen Bradley Co. v. Local Union No. 3, Int'l Bhd. of Elec. Workers, 1945, 325 U.S. 797, 65 S.Ct. 1533, 89 L.Ed. 1939, the union lost its antitrust exemption where it combined with employers to provide local manufacturers and contractors with a sheltered market for locally produced electrical equipment through the use of hot cargo provisions in collective bargaining agreements. The restraint was in the marketing competition in goods. See also United Mine Workers of America v. Pennington, 1965, 381 U.S. 657, 85 S.Ct. 1585, 14 L. Ed.2d 626 (antitrust exemption lost where union combined with employers to eliminate competition in the marketing of coal); and cf. Local Union 189,

Amalgamated Meat Cutters, etc. v. Jewel Tea Co., 1965, 381 U.S. 676, 85 S.Ct. 1596, 14 L.Ed.2d 640 (combination between union and employers through collective bargaining agreements to limit marketing hours—restraint imposed by union for its interests respecting conditions of employment within labor's exemption from antitrust laws).

The facts here go to a refusal to deal with the union with respect to conditions of employment, ordinarily a violation of § 8(a) (5) of the National Labor Relations Act, 29 U.S.C.A. § 158(a) (5). There is no indication, however remote, of a conspiracy or combination on the part of Prepmore and Blue Bell to restrain competition in the marketing of Prepmore's goods. In sum, the allegations of the first count of the counterclaim do not rise to the level of alleging a restraint of the type to which the Sherman Act is directed. Apex Hosiery Co. v. Leader, supra. It follows that the district court did not err in dismissing the count.

## II.

We affirm the dismissal of the second count of the counterclaim on the preemption doctrine. In San Diego Building Trades Council, etc. v. Garmon, supra, the Supreme Court stated:

> "* * * When an activity [which a state purports to regulate] is arguably subject to § 7 or § 8 of the Acts [National Labor Relations Act], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board. * * *" 359 U.S. at 245, 79 S.Ct. at 779.

That case had to do with a claim for damages based on a tort under the California law.[2] The court concluded that the state's jurisdiction over the conduct in question had been displaced in view of the fact that it arguably constituted an unfair labor practice under § 8 of the

---

2. We do not perceive that the doctrine of Labor Act preemption extends beyond activities which a state purports to regu-

late to include federal regulation such as is embodied in the Sherman Act.

Act. The court went on to save conduct marked by violence or imminent threats to the public order from the preemption doctrine in the following language:

"It is true that we have allowed the States to grant compensation for the consequences, as defined by the traditional law of torts, of conduct marked by violence and imminent threats to the public order. International Union, United Automobile, Aircraft and Agricultural Implement Workers, etc., v. Russell, 356 U.S. 634, 78 S.Ct. 932, 2 L.Ed.2d 1030; United Construction Workers, etc. v. Laburnum Const. Corp., 347 U.S. 656, 74 S.Ct. 833, 98 L.Ed 1025 * * * State jurisdiction has prevailed in these situations because the compelling state interest, in the scheme of our federalism, in the maintenance of domestic peace is not overridden in the absence of clearly expressed congressional direction. * * * "

359 U.S. at 247, 79 S.Ct. at 781.

See also Local 20, Teamsters, Chauffeurs & Helpers Union v. Morton, 1964, 377 U.S. 252, 84 S.Ct. 1253, 12 L.Ed.2d 280; and Gulf Coast Building & Construction Trades Council v. F. R. Hoar & Son, Inc., 5 Cir., 1967, 370 F.2d 746.

The claim asserted in the second count, considered in the light of the facts alleged, falls short of the violence or threat to public order category saved for state regulation under the *San Diego Building Trades Council* case. This count is no more than a claim that Prepmore and Blue Bell, together with their officers, conspired to unlawfully hinder and prevent the union from carrying on its lawful trade or calling. Taken in the context of the first count, this lawful calling consisted of a labor organization acting in a representative capacity in the area of negotiations concerning wages and other working conditions in the Prepmore plant and the consequent refusal to bargain. This claim is arguably within the confines of a refusal to bargain; conduct prohibited by § 8(a)(5) of the Labor Act, 29 U.S.C.A., § 8(a)(5). It was thus preempted. See

N. L. R. B. v. Roywood Corporation, 5 Cir., 1970, 429 F.2d 964 Part I.

Affirmed.

JOHN R. BROWN, Chief Judge (dissenting):

The case admittedly is a close and difficult one, but I dissent respectfully because I think the respective interests to be served which are inherent in both Counts 1 and 2, including the pretermitted question of a union being "injured in its business or property" (see note 1, Court's opinion), call for illumination on a factual record, not barebones pleadings no matter how generously or liberally construed.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.